**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SCIENTIFIC SPECIALTIES SERVICE, INC.,

Plaintiff/Counter-Defendant,

v.

MARC GREBOW,

Defendant/Counter-Plaintiff.

Civil Action No. 20-cv-01967-LKG

Dated: March 16, 2022

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

In this civil action, plaintiff, Scientific Specialties Service, Inc. ("Scientific"), brings tortious interference with a business and prospective contractual relations, conversion, Computer Fraud and Abuse Act ("CFAA"), 10 U.S.C. § 1030, and Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Com. Law §§ 11-1201 to -1209, claims against defendant, Marc Grebow ("Grebow"), for allegedly interfering with Scientific's business operations. *See generally* Compl., ECF No. 3. Grebow has moved for summary judgment on Scientific's claims and on his counterclaim regarding whether the parties can litigate the issue of who owns certain domain names at issue in this case, pursuant to Fed. R. Civ. P. 56. *See generally* Def. Mot., ECF No. 30; *see also* Countercompl., ECF No. 6. Scientific has also moved to strike portions of Grebow's reply brief. Pl. Mot., ECF No. 38.

No hearing is necessary to resolve these motions. *See* L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** Grebow's motion for summary judgment; (2) **DENIES** Scientific's motion to strike; and (3) **DISMISSES** the complaint and counter-complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

As background, Scientific Specialties Service, Inc. is a Maryland corporation that sells scientific and laboratory equipment over two Internet domains —www.spispec.com and www.glassvials.com (the "Domains"). Compl. at ¶¶ 1, 5.

Grebow was a 50% shareholder of Scientific until October 2015. *Id.* at ¶ 2. Grebow is the registrant of the Domains and he is listed by the Domains' registrar, www.GoDaddy.com, as the Domains' owner and administrator. *Id.* at ¶ 6.

In the complaint, Scientific asserts claims for tortious interference with a business and prospective contractual relations (Counts I and II); violation of the CFAA (Count III); violation of the MUTSA (Count IV); and conversion (Count V) against Grebow. *Id.* at ¶¶ 18-48. Grebow has also filed a counter-complaint, in which he asserts a counterclaim for declaratory judgment and seeks a temporary restraining order related to whether the doctrine of res judicata precludes the parties from litigating the issue of who owns the Domains at issue in this case. *See* Countercompl. at ¶¶ 19-22.

<u>Grebow's Alleged Interference</u>

Scientific alleges in the complaint that Grebow engaged in several acts which have interfered with its business operations. First, Scientific alleges that, on March 31, 2020, Grebow changed the routing instructions to the Domains, so that visitors to the Domains would be redirected to a webpage indicating that the Domains were inactive and suggesting that Scientific was no longer in business. Compl. at ¶ 8. Second, Scientific alleges that Grebow intercepted certain emails that were sent to Scientific by its customers, and that these emails contained trade secret information and other confidential business information. *Id.* at ¶¶ 9-10.

In addition, Scientific alleges that, in 2012, Grebow improperly used his administrator status to reroute the Domains' email communications from a secured server to an unsecured email account. *Id.* at ¶ 12. Scientific further alleges that, on October 18, 2012, Grebow entered

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl.") and Grebow's motion for summary judgment and memorandum in support thereof. ("Def. Mot.").

its offices, connected to Scientific's terminal server, and changed the administrator password, thereby locking out Scientific's management and IT consultant from the company's computer system. *Id.* at ¶ 14. Lastly, Scientific alleges that, on October 19, 2012, Grebow entered its offices, accessed its computer systems, and changed the security settings and administrator passwords on the computer systems. *Id.* at ¶ 15.

<u>The Parties' Prior Litigation</u>

The parties have engaged in extensive litigation related to the Domains prior to the commencement of this case. On October 25, 2012, Scientific initiated an action against Grebow in the Circuit Court for Baltimore County related to the ownership of the Domains, which resulted in a settlement and dismissal of that case with prejudice. *See Sci. Specialties Servs. Inc v. Grebow*, No. 03-C-11-010947 (Cir. Ct. Balt. Cty. 2012); Countercompl. Exs. 2, 3, ECF No. 6-1. On April 8, 2016, Scientific brought a declaratory judgment action against Grebow in the Circuit Court for Baltimore County related to the ownership of the Domains, which was later removed to this Court on June 23, 2016. *See Sci. Specialties Serv., Inc. v. Grebow*, No. 16-2325, (D. Md. 2016), ECF Nos. 1, 2.

On November 9, 2016, the Court issued an opinion holding, among other things, that "the dismissal of the prior [2012] litigation with prejudice did have the effect of preventing the relitigation of the identity of the owner of the two domains." *See Scientific*, No. 16-2325 (D. Md. 2016), ECF No. 16, at 1. The Court also held that "the settlement agreement [in the prior litigation] did not provide for the transfer of the domains but only of defendant's interests in [Scientific]." *Id*. at 1. Lastly, on May 12, 2020, Scientific filed an action for transfer of the Domains from Grebow to Scientific with the Forum Arbitration-Mediation-International ("the Forum"). Countercompl. Exs. 7, 8, ECF No. 6-1. On June 24, 2020, the Forum transferred ownership of the Domains to Scientific. Countercompl. Exs. 7, 8.

**B. Procedural Background**

Scientific commenced this action in the Circuit Court for Anne Arundel County, Maryland on June 3, 2020. Compl. Grebow answered the complaint and removed the case to this Court on July 2, 2020. *See* Notice of Removal, ECF No. 1; Ans., ECF No. 4.

On July 8, 2020, Grebow filed a counter-complaint. *See generally* Countercompl. Scientific answered Grebow's counter-complaint on July 29, 2020. Pl. Ans., ECF No. 7.

On May 18, 2021, Grebow filed a motion for summary judgment and a memorandum in support thereof. Def. Mot. Scientific filed a response in opposition to Grebow's motion on June 1, 2021. Pl. Resp., ECF No. 32. Grebow filed a reply in support of its motion on September 29, 2021. Def. Reply, ECF No. 37.

On October 20, 2021, Scientific filed a motion to strike portions of Grebow's reply brief and a memorandum in support thereof. Pl. Mot; Pl. Mem., ECF No. 38-1. Grebow filed a response in opposition to Scientific's motion to strike on October 29, 2021. Def. Resp., ECF No. 39. Scientific filed a reply in support of its motion to strike on November 12, 2021. Pl. Reply, ECF No. 40.

These motions having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979). When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Prot. Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually

support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 256.

The United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

**B. Tortious Interference With Business Or Contractual Relations**

This Court has recognized that "[t]he tort of intentional interference with contractual or business relations is 'well-established in Maryland.'" *State Farm Mut. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 569 (D. Md. 2019) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 116 (Md. 1994)). This tort provides that "one not privileged to do so who purposely induces or causes a third person not to perform a contract or enter into or continue a business relation with another is liable for the harm caused thereby." *United Rental Equip. Co. v. Potts & Callahan Contracting Co.*, 191 A.2d 570, 574 (Md. 1963).

To prove a claim for intentional interference with contractual or business relations, a plaintiff must show the following elements: "(1) intentional and [willful] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *See Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (quoting *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003)). Maryland Courts have recognized that such tortious interference has "two general manifestations." *Macklin*, 639 A.2d at 117. The interference either induces the breach of an existing contract, or the interference maliciously or wrongfully interferes with economic relationships in the absence of a breach of contract. *Blondell*, 991 A.2d at 97 (citation omitted).

Examples of the second manifestation of this tort include, "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc*., 650 A.2d 260, 271 (Md. 1994) (quotation omitted).

"An essential element of a tortious interference claim is a showing that the actions undertaken were 'wrongful.'" *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 541 (D. Md. 2006) (quoting *Martello v. Blue Cross & Blue Shield of Md., Inc.*, 795 A.2d 185, 194 (Md. Ct. Spec. App. 2002)). In this regard, "[w]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Id.* (quoting *Carter v. Aramark Sports & Entm't Servs.*, 835 A.2d 262, 279 (Md. Ct. Spec. App. 2003), *cert. denied*, 844 A.2d 427 (Md. 2004)). In addition, to sustain a claim for tortious interference with prospective business relationship, a plaintiff must "'identify a possible future relationship which is likely to occur, absent the interference, with specificity.'" *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013) (quoting *Baron Fin. Corp.*, 471 F. Supp. at 546 (citing Maryland law)); *see also Press v. United States*, No. 17-1667, 2018 WL 1211537, at *9 (D. Md. Mar. 8, 2018) (quoting *Baron Fin. Corp.*, 471 F. Supp. 2d at 542) ("A plaintiff '*must* establish some evidence that a prospective business relationship is likely to occur.'") (emphasis in original). A plaintiff must also establish that the defendant's tortious conduct was a cause in fact of the injury for which compensation is sought and that any damages sought are a "natural, proximate and direct effect of the tortious misconduct." *See Med. Mut. Liab. Soc. of Md. v. B. Dixon Evander & Assocs., Inc.*, 660 A.2d 433, 439 (Md. 1995); *see also Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970) (stating that "[c]ausation in fact is concerned with the . . . inquiry of whether defendant's conduct *actually* produced an injury"); *Jones v. Malinowski*, 473 A.2d 429, 435 (Md. 1984).

**C. The Computer Fraud And Abuse Act**

The Computer Fraud and Abuse Act ("CFAA") is primarily a criminal statute, but this statute also permits private parties to bring a cause of action to redress a violation of the CFAA. *See* 18 U.S.C. § 1030; *see also Tech Systems, Inc. v. Pyles*, 630 F. App'x 184, 186 (4th

Cir. 2015); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 645 (4th Cir. 2009).[2] A person violates the CFAA by "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer," or "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." 18 U.S.C. §§ 1030(a)(2)(C), (5)(C).

**D. The Maryland Uniform Trade Secrets Act**

The Maryland Uniform Trade Secrets Act ("MUTSA") defines a "trade secret" as any information that the owner "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and takes reasonable efforts to maintain its secrecy. *See* Md. Code Ann., Com. Law § 11-1201(e). To determine whether information is a trade secret, Maryland courts assess: (1) the extent to which the information is known outside of plaintiff's business; (2) the extent to which it is known by employees and others involved in plaintiff's business; (3) the extent of measures taken by plaintiff to guard the secrecy of the information; (4) the value of the information to plaintiff and competitors; (5) the amount, effort, or money expended by plaintiff in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated by others. *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018) (citing Restatement (First) of Torts § 757 cmt. b); *see also Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 129 (D. Md. 2020).[3] And so, a

[2] Such a civil suit may be brought by "[a]ny person who suffers damage or loss" as a result of a CFAA violation. 18 U.S.C. § 1030(g). The CFAA requires that the violation must have caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* at §§ 1030(c)(4)(A)(i)(I), (g).

[3] This Court and the Maryland Court of Appeals have considered the types of information that can constitute a trade secret under the MUTSA on several occasions. *See, e.g.*, *AirFacts*, 909 F.3d at 96-97 (deeming as trade secrets, under Maryland law, documents containing information available to all database subscribers that an individual compiled into a more accessible format through "painstaking, expert arrangement"); *Motor City Bagels v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 478-79 (D. Md. 1999) (finding that a business plan was a trade secret because it included "personal insights and analysis brought to bear through diligent research and by marshaling a large volume of information"); *LeJeune v. Coin Acceptors, Inc.*, 849 A.2d 451, 463-64 (Md. 2004) (deeming pricing information that disclosed an employer's manufacturing costs and profit margins a trade secret because of the "unique, competitive nature of the currency acceptor industry"); *cf. Albert S. Smyth Co. v. Motes*, No. 17-677, 2018 WL 3635024, at *4 (D. Md. July 31, 2018) (deeming as trade secrets, for purposes of a motion to dismiss, documents containing customer lists, pricing sheets, and business strategies).

plaintiff must establish that (1) "it possessed a valid trade secret," (2) "the defendant acquired its trade secret," and (3) "the defendant knew or should have known that the trade secret was acquired by improper means," to prevail on a MUTSA claim. *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993) (citation omitted).

### E. Res Judicata And Collateral Estoppel

Lastly, under the doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *see also Brown v. Felsen*, 442 U.S. 127, 131 (1979); *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991); *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004). For the doctrine of res judicata to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981). The doctrine of "'collateral estoppel' or 'issue preclusion' . . . is a subset of the res judicata genre." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d. 322, 326 (4th Cir. 2004) (citation omitted) (emphasis removed). To apply collateral estoppel to an issue or fact, the proponent must demonstrate that: "(1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding." *Id.*; *see also Polk v. Montgomery Cty., Md.*, 782 F.2d 1196, 1201 (4th Cir. 1986).

## IV. LEGAL ANALYSIS

Grebow has moved for summary judgment in his favor with regards to Scientific's claims in this case for four reasons. First, Grebow argues that Scientific cannot prevail upon its tort claims, because Scientific fails to: (1) show that he engaged in unlawful or wrongful conduct; (2) identify a potential future business relationship that was likely to occur absent the alleged interference; or (3) show that his alleged conduct was the proximate cause of Scientific's injuries. Def. Mot. at 9-23. Second, Grebow argues that Scientific's CFAA claim must fail,

because Scientific cannot show that he accessed its computers, or that an interruption of service, restoration of data, or similar activities resulted from his alleged interference. *Id.* at 24-27.

Third, Grebow contends that Scientific's MUTSA and conversion claims are legally deficient, because: (1) he did not receive any of Scientific's information; (2) Scientific has not shown that the information at issue is trade secret information; and (3) the MUTSA provides the sole legal remedy for the conduct alleged in Scientific's conversion claim. *Id.* at 27-29. Lastly, Grebow argues that he is entitled to summary judgment in his favor on the issue of whether he legally owns the Domains, because the Court previously resolved this issue. *Id.* at 29-32.

Scientific counters that it has brought viable tort, CFAA, and MUTSA claims in this case and that there are material facts in dispute regarding Grebow's alleged ownership of the Domains. Pl. Resp. at 2-12. In addition, Scientific argues that this Court's prior ruling did not have the effect of preventing re-litigation of the identity of the owner of the two domains. *Id.* at 12. And so, Scientific requests that the Court deny Grebow's motion. *Id.* at 14. Lastly, Scientific has moved to strike certain pages of Grebow's reply brief, upon the ground that Grebow raises new arguments in the brief that were not included in his original motion. Pl. Mem. at 1-2.

For the reasons that follow, the undisputed material facts show that Grebow is the registrant of the Domains, and that res judicata precludes re-litigation of the issue of who owns the Domains in this case. The undisputed material facts also show that Scientific cannot prevail on its CFAA, MUTSA, and conversion claims, because Scientific fails to show that Grebow accessed its computers or intercepted any of its emails, and the MUTSA precludes Scientific's conversion claim. Lastly, the undisputed material facts show that Scientific cannot prevail on its tort claims, because it cannot identify a wrongful or unlawful act by Grebow related to his alleged interference with Scientific's business. And so, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** Grebow's motion for summary judgment; (2) **DENIES** Scientific's motion to strike; and (3) **DISMISSES** the complaint and counter-complaint.

### A. The Undisputed Material Facts Show That Grebow Is The Registrant Of The Domains

As an initial matter, the undisputed material facts show that Grebow is the registrant of the Domains at issue in this case. While the parties disagree about who owns the Domains, they

agree that Grebow is the registrant of the Domains and that Grebow controls the Domains as the registrant of record at www.GoDaddy.com. Compl. at ¶ 6; Def. Mot. Ex. 8 at 1, ECF No. 30-2; Pl. Resp. at 6. Given this, there is no genuine dispute in this case that, as the registrant, Grebow had the authority to deactivate the Domains.

While the Court need not determine who owns the Domains to resolve the pending motions, the Court also agrees with Grebow that the parties may not re-litigate this issue in this forum. As this Court has recognized, Grebow and Scientific previously litigated the issue of who owns the Domains in the Circuit Court of Baltimore County. *See Scientific*, No. 16-2325 (D. Md. 2016), ECF No. 16, at 1; *see also Scientific,* No. 03-C-11-010947 (Cir. Ct. Balt. Cty. 2012). And so, the doctrine of res judicata precludes the re-litigation of this issue in this case. *In re Microsoft Corp.*, 355 F.3d. at 326 (recognizing that collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate").[4]

**B. Scientific Cannot Show That Grebow Violated The CFAA**

The undisputed material facts also show that Scientific cannot prevail on its CFAA claim, because Scientific fails to show that Grebow "accessed" its computers within the meaning of that statute. To violate the CFAA, Grebow must have either, "intentionally access[ed] a computer without authorization or exceed[ed his] authorized access, and thereby obtain[ed] . . . information from any protected computer," or "intentionally access[ed] a protected computer without authorization, and as a result of such conduct, cause[d] damage and loss." 18 U.S.C. §§ 1030(a)(2)(C), (5)(C); *see also Van Buren v. United States,* 141 S. Ct. 1648, 1657 (2021) (noting that "'access' references the act of entering a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases") (citation omitted). But, the undisputed material facts in this case make clear that Grebow did not "access" Scientific's computers, as contemplated by the CFAA.

[4] Because the doctrine of res judicata precludes re-litigation of the issue of who owns the Domains in this case, the Court dismisses Grebow's counter-complaint.

Indeed, while Scientific alleges that Grebow "has been intercepting scispec.com and glassvials.com e-mails," it points to no facts or evidence to show that Grebow actually intercepted these emails, or to show how this conduct involves accessing its computers. Compl. at ¶ 9; *see also* Pl. Resp. at 9-10; Compl. at ¶¶ 30-32 (alleging that Grebow, either without authorization or by exceeding his authorization, accessed a protected Scientific computer by rerouting, intercepting and/or stealing emails). In fact, Scientific acknowledges in the complaint that its emails have been redirected to a static GoDaddy webpage, rather than having been intercepted by Grebow. Compl. at ¶ 8. Scientific also fails to explain how the act of deactivating the Domains, which Grebow acknowledges doing, could have involved accessing its computers. *See generally id.*; Pl. Resp.

Scientific's argument that it can prevail on its CFAA claim, because Grebow improperly accessed its computers in 2012, is also unavailing. Compl. at ¶¶ 13-14 (alleging that Grebow, among other things, improperly connected to its terminal server and changed the administrator password on the server in 2012). The complaint makes clear that the conduct at issue occurred eight years before Scientific commenced this action, and so, Scientific's claim based upon these allegations is time-barred under the CFAA. *See* 18 U.S.C. § 1030(g) ("No action may be brought under [the CFAA] unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.").

Because the undisputed material facts show that Grebow did not access Scientific's computers in 2020, the Court GRANTS Grebow's motion for summary judgment on this issue and DISMISSES Count III of the complaint.

### C. The Undisputed Material Facts Show That Grebow Did Not Violate The MUTSA

The Court must also dismiss Scientific's MUTSA claim, because the undisputed material facts show that Grebow did not intercept or access any emails containing Scientific's trade secret information. *See Trandes*, 996 F.2d at 660 (recognizing that, to state a claim under the MUTSA, plaintiff must show evidence of a misappropriated trade secret). As discussed above, Scientific fails to identify any facts or evidence to show that Grebow actually intercepted or read any of the emails that have been redirected from the Domains. *See generally* Pl. Resp. Given this, Scientific cannot show that Grebow accessed or misappropriated any trade secret information

that could have been contained in these emails.[5]

The Court also agrees with Grebow that Scientific cannot assert a conversion claim based upon the alleged misappropriation of its trade secret information, because such a claim is precluded by the MUTSA. This Court has held that, "to the extent that [a] conversion claim is based on the misappropriation of a trade secret, MUTSA preempts it." *Equity Prime Mortg., LLC v. 1st Fin., Inc.*, No. 17-3754, 2019 WL 859135, at *8 (D. Md. Feb. 22, 2019)). Scientific also argues without persuasion that it may pursue its conversion claim, if the Court concludes that the information allegedly misappropriated by Grebow is not trade secret information. Pl. Resp. at 11. But, the complaint makes clear that Scientific's conversion claim is based upon the misappropriation of its *trade secrets*. Compl. at ¶ 43 (alleging that "Grebow misappropriated Sci[entific's] [t]rade [s]ecret information."). Given this, Scientific's conversion claim is precluded by the MUTSA.

Because Scientific cannot show that Grebow intercepted its emails, and its conversion claim is precluded by the MUTSA, the Court also GRANTS Grebow's motion for summary judgment on these issues and DISMISSES Counts IV and V of the complaint.

**D. Scientific Cannot Prevail On Its Tort Claims**

As a final matter, the undisputed material facts also show that Scientific cannot prevail on its tort claims, because it cannot show that Grebow engaged in any unlawful or wrongful conduct in connection with his alleged tortious interference with Scientific's business.

To prove a claim for intentional interference with contractual or business relations, Scientific must show: (1) intentional and willful acts; (2) calculated to cause damage to plaintiff in its lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4)

---

[5] Scientific alleges that the emails at issue contain customer and supplier data, potential sale information, and pricing information. Compl. at ¶ 34. But, even if Scientific could show that Grebow intercepted this information, Scientific would have difficulty showing that the information is trade secret information under the MUTSA. *See* Md. Code Ann., Com. Law § 11-1201(e) (defining a "trade secret" as any information that the owner "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and takes reasonable efforts to maintain its secrecy).

actual damage and loss resulting. *See Blondell*, 991 A.2d at 97 (quoting *Kaser*, 831 A.2d at 53). This Court has recognized that:

> Wrongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships. [Such w]rongful . . . acts include common law torts and "violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution of threat of groundless civil suits or criminal prosecutions in bad faith."

*Baron Fin. Corp.*, 471 F. Supp. 2d at 541 (quoting *Carter*, 835 A.2d at 279).

Here, Scientific points to no facts or evidence to show that Grebow engaged in a wrongful or unlawful act in connection with his alleged interference with its business. As discussed above, Scientific alleges that Grebow intentionally interfered with Scientific's business by: (1) blocking existing and new customer access to its website; (2) unlawfully intercepting emails; and (3) misappropriating Scientific's confidential business information and diverting proprietary information. Compl. at ¶ 19. But, there can be no genuine dispute that the deactivation of the Domains on March 30, 2020, could not have been wrongful or unlawful conduct, because Grebow is the registrant of the Domains. *See id.* at ¶ 6; Def. Mot. Ex. 8 at 1. In addition, and as discussed above, Scientific cannot show that Grebow violated either the CFAA or the MUTSA in connection with the alleged interference with its business.

Because Scientific fails to show that Grebow engaged in a wrongful or unlawful act in connection with his alleged interference with Scientific's business operations, the Court GRANTS Grebow's motion for summary judgment on this final issue and DISMISSES Counts I and II of the complaint.

## V. CONCLUSION

In sum, the undisputed material facts in this case show that Grebow is the Domains' registrant and that res judicata precludes re-litigation of the issue of who owns the Domains in this case. The undisputed material facts also show that Scientific cannot prevail on its CFAA, MUTSA, and conversion claims, because Scientific cannot show that Grebow accessed its computers or intercepted its email, and the MUTSA precludes Scientific's conversion claim.

Lastly, the undisputed material facts show that Scientific cannot prevail on its tort claims, because it cannot show that Grebow engaged in a wrongful or unlawful act in connection with his alleged interference with Scientific's business. And so, for the foregoing reasons, the Court:

1. **GRANTS-in-PART** and **DENIES-in-PART** Grebow's motion for summary judgment;
2. **DENIES** Scientific's motion to strike; and
3. **DISMISSES** the complaint and counter-complaint.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge